IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-18-278 |
| | * | |
| BRIAN CUNNINGHAM | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Brian Cunningham is a forty-seven-old federal prisoner, currently incarcerated at Lewisburg USP, serving a 60-month sentence for a drug trafficking offense. Now pending is Cunningham's second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF 372).[1] Cunningham seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. The government opposes the motion, (ECF 375), and Cunningham has replied, (ECF 379). For the reasons explained below, the motion will be granted and Cunningham's sentence will be reduced to time served, followed by a four-year term of supervised release, of which twelve months will be served on home confinement.

## BACKGROUND

In September 2018, Cunningham pled guilty to one count of distribution and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a), and one count of conspiracy to distribute cocaine base in the amount of at least 28 but less than 112 grams, in violation of 21 U.S.C. § 846. (ECF 127, Plea Agreement at 1, 9). Cunningham admitted that, from at least November 2017 to May 2018, he agreed with his co-conspirators to distribute and possess with the intent to distribute cocaine base in the 2100 block of Aiken Street in Baltimore, Maryland. (*Id.* at 9).

---

[1] Cunningham's first motion was denied without prejudice because he had not shown he had exhausted his administrative remedies. (ECF 324).

1

He participated in at least one sale of cocaine base to a confidential informant or undercover agent. (*Id.*). Cunningham agreed that members of the conspiracy possessed handguns in order to protect themselves, their property, and their territory, but did not concede, and the government did not contend, that Cunningham himself possessed a firearm in furtherance of his drug activities. (*Id.*). Similarly, Cunningham acknowledged that two members of the conspiracy were involved in a shootout on April 3, 2018, but there is no indication Cunningham was present during or involved in that incident. (*Id.*).

Prior to Cunningham's sentencing the United States Probation Office (USPO) submitted a Presentence Report for Mr. Cunningham which concluded that his guideline sentencing range was 188 to 235 months, based on his status as a career offender. (ECF 187 ¶ 76). The career offender designation was based on 1998 and 2017 state convictions for distribution of narcotics and a 2000 state conviction for attempted murder. (*Id.* ¶¶ 35, 37, 39, 43). Without the career offender designation, Cunningham's guideline range would have been 57 to 71 months. The government sought a sentence within that range, recognizing that while Cunningham's criminal history was significant, his relative culpability in this offense was similar to other defendants in the case sentenced to the mandatory minimum sentence of 60 months. (ECF 185, Gov't Sentencing Memo.). The court sentenced Cunningham to 60 months, followed by a four-year period of supervised release, finding that a sentence well below the guideline range was appropriate given Cunningham's role in the offense, his sustained periods of employment following his release from state prison in 2005, and his acceptance of responsibility. (ECF 188, Judgment; ECF 189, Statement of Reasons).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before

the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Cunningham submitted a request for compassionate release to his warden January 27, 2021. (ECF 374-4). The government does not contest that Cunningham has properly exhausted his administrative remedies. Thus, the only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of Cunningham's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant

brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Cunningham argues that his risk of developing serious illness related to COVID-19 due to his underlying medical conditions (obesity, hypertension, and asthma) constitutes an "extraordinary and compelling reason" to reduce his sentence. According to the Centers for Disease Control ("CDC"), obesity, hypertension, asthma "can make you more likely to get severely ill" (meaning hospitalization, intensive care, the need for a ventilator, or death) from COVID-19. *COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021). Cunningham's medical records also indicate that he has a history of smoking—he smoked a half a pack of cigarettes per day for thirty years. (ECF 374-1 at 32). Being a current or former cigarette smoker can also make you more likely to get severely ill from COVID-19. *COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021). The CDC has also warned that "[t]he risk of severe COVID-19 increases as the number of underlying medical conditions increases in an individual[,]" *COVID-19: Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated May 13, 2021), and the mere fact of Cunningham's incarceration also compounds his risk. *See Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *COVID-19: For People Living in Prisons and Jails*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (updated Mar. 5, 2021) ("Living in prisons and jails puts you at higher risk for getting COVID-19 because: it may be hard to stay at least 6 feet away

. . . from other people; there may not be enough space to keep people with COVID-19 away from others; you may be sharing space with someone who has the virus and does not know it . . . ; staff or visitors may have the virus and not know it.").

The government argues that Cunningham's medical conditions are not an extraordinary and compelling reason for his release because Cunningham has already contracted and recovered from COVID-19 and because he has received a COVID-19 vaccine.

Cunningham's vaccination status does not greatly decrease the court's concern that his medical conditions increase his risk of severe illness due to COVID-19. While clinical trials for vaccines with emergency use authorization have shown that the vaccines "are effective at helping protect against severe disease and death from . . . the virus that causes COVID-19," *see COVID-19: Key Things to Know About COVID-19 Vaccines*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (updated Aug. 19, 2021), its effectiveness is not guaranteed. Additionally, there is much more for experts to learn about "how effective the vaccines are against new variants of the virus that causes COVID-19" and "how long COVID-19 vaccines protect people." *Id.* While the CDC currently believes "breakthrough" infections of COVID-19 in vaccinated people are "rare" the agency has also described such infections as "inevitable." *See COVID-19: Science Brief: COVID-19 Vaccines and Vaccination*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (updated Jul. 27, 2021). As of this writing there are at least two known instances of large COVID-19 outbreaks where the majority of cases are among vaccinated persons. *See Morbidity and Mortality Weekly Report: Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021*, CDC, https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm (Jul. 30, 2021) (identifying 469 cases of the Delta variant among Massachusetts residents who had traveled through a Barnstable County town,

74 percent of which occurred in fully vaccinated persons, following large public events in the town); *More than 200 staff members at 2 San Francisco hospitals have tested positive, most in breakthrough Delta infections*, New York Times, https://www.nytimes.com/2021/07/31/us/covid-san-francisco-hospital-delta.html (Jul. 31, 2021) (reporting that "[a]t least 233 staff members at two major San Francisco hospitals, most of them fully vaccinated, tested positive for the coronavirus this month"). And just weeks ago, in a rapid reversal of earlier guidance that vaccinated persons did not need to wear a face mask indoors, the possibility of breakthrough infections caused the CDC to recommend that fully vaccinated people who are at an increased risk of severe illness should wear a mask in congregate indoor settings, regardless of the level of community transmission in their area. *See COVID:19: Interim Public Health Recommendations for Fully Vaccinated People*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (updated Aug. 19, 2021). Moreover, the literature the court has been able to find on the likelihood and severity of reinfection suggests that a second infection for Cunningham could be more severe rather than less. *See Morbidity and Mortality Weekly Report (MMWR): Susptected Recurrent SARS-CoV-2 Infections Among Residents of a Skilled Nursing Facility During a Second COVID-19 Outbreak – Kentucky, July – November 2020*, CDC, https://www.cdc.gov/mmwr/volumes/70/wr/mm7008a3.htm?s_cid=mm7008a3_w (Feb. 26, 2021); *Recurrent COVID-19 including evidence of reinfection and enhanced severity in thirty Brazilian healthcare workers*, Journal of Infection, https://www.journalofinfection.com/article/S0163-4453(21)00043-8/fulltext (Feb. 12, 2021). These studies are case series describing a limited number of patients and it is not clear how applicable this research is to vaccinated people, but while the science is still developing, the court will not ignore this potential risk.

The court will take Cunningham's vaccination status and the fact of his prior infection into account when balancing his risk of illness with the § 3553(a) factors, but at this point, over a year and

a half into an unprecedented global pandemic about which there are still a number of remaining unknowns, the fact that Cunningham has received a vaccine does not negate that his underlying health conditions make him eligible for compassionate release. *See United States v. Palmer*, No. 8:13-CR-00623-PWG-2, 2021 WL 3212586, at *3 (D. Md. July 29, 2021);[2] *United States v. Spriggs*, No. CR CCB-10-364, 2021 WL 1856667, at *3 (D. Md. May 10, 2021).[3]

Cunningham's risk of severe illness from COVID-19 does not, however, end the court's inquiry. The compassionate release statute provides that, before reducing a defendant's sentence for "extraordinary and compelling reasons," the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A).

The government opposes Cunningham's release under the § 3553(a) factors primarily on the basis that the seriousness of Cunningham's offense and his criminal history demonstrate that he must serve out the remainder of his sentence in order to protect the public, account for the seriousness of the offense, promote respect for the law, and provide just punishment. *See* §§ 3553(a)(2)(A), (a)(2)(C). As explained above, Cunningham's conduct was serious and his criminal record is significant. Without minimizing Cunningham's prior criminal conduct, the court notes that all but one of Cunningham's prior felony convictions occurred more than twenty years ago, when he was a

---

[2] Unpublished opinions are cited for the soundness of their reasoning and not for any precedential value.

[3] The government also argues that Cunningham is not eligible for compassionate release unless the court finds him not a danger to the community under 18 U.S.C. § 3412(g), citing U.S.S.G. § 1B1.13, which advises that in order to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A), the court must determine (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the reduction is consistent with the U.S.S.C.'s policy statements. But as stated *supra*, U.S.S.G. § 1B1.13 applies only to motions for sentence reduction brought on behalf of defendants by the BOP and thus is not applicable to Cunningham's motion. *See McCoy*, 981 F.3d at 281–82; *United States v. Kibble,* 992 F.3d 326, 330–31 (4th Cir. 2021). At any rate, in addressing the § 3553(a) factors, the court considers the need for the sentence to "protect the public from further crimes of the defendant," see 18 U.S.C. § 3553(a)(2)(C), an inquiry which implicitly requires the court to assess Cunningham's danger to the community.

much younger man. (*See* ECF 187 ¶¶ 29–39). The government does not address the age of Cunningham's convictions, nor the fact that while Cunningham has acknowledged that some of his co-conspirators carried firearms and engaged in gun violence, it has never been argued that Cunningham himself was engaged in similar conduct while he participated in the conspiracy. At this point, Cunningham has demonstrated over twenty-years of nonviolence. It is concerning, however, that after a period of sustained legal employment from 2010 to 2017, Cunningham was convicted of another narcotics distribution offense from which he was on supervised release at the time he committed the instant offense. (*Id.* ¶ 39).

The court considers this history alongside Cunningham's post-sentencing conduct, which "provides the most up-to-date-picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The parties note no disciplinary history while Cunningham has been incarcerated. If released, Cunningham plans to live with his wife, with whom he appears to have maintained a strong relationship throughout his incarceration. The court received several letters from Cunningham's community and family prior to his sentencing and more recently in support of his motion for compassionate release, (ECF 379-1; ECF 379-2), suggesting that he will have significant support if he is released. (ECFs 181-2, 181-3, 181-4, 181-6, 181-7). Cunningham has served approximately 80 percent of his expected sentence and is scheduled to be released in August 2022. After reviewing his history, and considering also that Cunningham will serve four years on supervised release, the court is persuaded that accelerating Cunningham's release by one year, with a condition of home confinement, poses a minimal risk to the community and is sufficient to provide just punishment for the offense and to deter further criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

Based on the above considerations, and in light of the principle that a sentence should be "sufficient, but not greater than necessary," *see* 18 U.S.C. § 3553(a), the court finds that the § 3553(a)

factors weigh in favor of reducing Cunningham's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). This, combined with the "extraordinary and compelling" risk to Cunningham of severe illness from COVID-19 should he remain in prison, leads the court to conclude that Cunningham is entitled to compassionate release.

## CONCLUSION

For the foregoing reasons, Cunningham's motion for compassionate release (ECF 372) will be granted and his sentence will be reduced to time served. The associated motions to seal (ECFs 373, 376) will be granted to protect the confidentiality of personal information.

The terms and conditions of supervised release to which Cunningham was sentenced will remain in place, with the additional condition that Cunningham will spend the first twelve months of supervised release on home confinement, to be monitored by U.S. Probation, using location monitoring technology at the discretion of the Probation Officer. For the twelve-month home confinement period, Cunningham shall not leave the address approved by U.S. Probation except for activities approved in advance by U.S. Probation. In addition, he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19.

A separate order follows, which will be stayed for up to fourteen days to make appropriate travel arrangements and to ensure Cunningham's safe release, including by placing Cunningham in quarantine for a period of fourteen days and to evaluate him for the purposes of receiving a medical clearance.

__8/20/2021__  
Date

___/S/_____  
Catherine C. Blake  
United States District Judge